UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x
UNITED STATES OF AMERICA,                   :
                                            :
    -against-                              :
                                            :         MEMORANDUM OPINION
ERNEST LIVINGSTON,                          :
                                            :         18-CR-416 (ENV)
                               Defendant.   :
----------------------------------------------------------------- x

VITALIANO, D.J.

      The First Step Act has pioneered a non-habeas pathway enabling federal convicts, upon their own application, to seek an order of the sentencing court directing their early and compassionate release from the custody imposed by a final judgment of conviction. *See, e.g.*, *United States v. Resnick*, No. 14-CR-810 (CM), 2020 WL 1651508, at *2 (S.D.N.Y. Apr. 2, 2020) (discussing how the First Step Act amended 18 U.S.C. § 3582(c)(1)). By no means, though, did the statute deal the Bureau of Prisons ("BOP") out of the process. Quite the opposite, it posted BOP as the centurion guarding the gate. Applications for compassionate release begin with BOP, 18 U.S.C. § 3582(c)(1)(A),[1] and, more pertinent here, BOP is given 30 days to consider them. *Id*. It is only after an application has been denied by BOP or 30 days has run without action taken by the agency that judicial relief may be sought. *Id*. In ordinary times and circumstances, this statutorily imposed exhaustion requirement is not waivable. *United*

---

[1] Compassionate release applications authorized by the First Step Act are to be filed with the warden of the defendant's place of detention. *See* 18 U.S.C. § 3582(c)(1)(A).

*States v. Raia*, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) (requiring "strict compliance" with administrative exhaustion); *United States v. Rensing*, No. 16 CR 442 (VM), 2020 WL 1847782, at *1 (S.D.N.Y. Apr. 13, 2020) (finding that the court may not waive the exhaustion requirement ); *United States v. Woodson*, No. 18-CR-845 (PKC), 2020 WL 1673253, at *3 (S.D.N.Y. Apr. 6, 2020) (same).

Painfully, these are hardly ordinary times and circumstances. The landmark compassionate release legislation was crafted and implemented long before the horrors of the COVID-19 pandemic could ever have been in the contemplation of mankind. In a little over a month's time, thousands upon thousands of deaths have been recorded in this district—the district that houses the federal Metropolitan Detention Center ("MDC"). A degree in epidemiology is not needed to understand that this novel coronavirus is fast moving, pervasive and can lead to a fatal result in short order after infection. When its threat is presented, the time for action is immediate. In the context of such extraordinary life-threatening circumstances, the crafting of judge-made exceptions to a statutory exhaustion requirement is not only appropriate, but compelled by the higher authority and God-made injunction to act, as the statute would otherwise permit, to save human life. *See United States v. Haney*, No. 19-CR-541 (JSR), 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020) ("Congress cannot have intended the 30-day waiting period of § 3582(c)(1)(A) to rigidly apply in th[is] highly unusual situation"); *United States v. Smith*, No. 12-CR-133 (JFK), 2020 WL 1849748, at *4 (S.D.N.Y. Apr. 13, 2020)

(agreeing "with certain of its sister courts that judicial waiver is permissible in light of the extraordinary threat certain inmates face from COVID-19"); *United States v. Perez*, No. 17-CR-513-3 (AT), 2020 WL 1546422, at *3 (S.D.N.Y. Apr. 1, 2020) (waiving exhaustion because "delaying release amounts to denying relief altogether."); *see also Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019) ("Even where exhaustion is seemingly mandated by statute or decisional law, the requirement is not absolute.").

It is in this setting that defendant Ernest Livingston moved the Court for compassionate release and was heard at argument on April 15, 2020. His application presented two separate points for decision since he was heard prior to any action by BOP on his compassionate release application and without exhaustion of his administrative remedy. The first point was whether his application fit within the confines of a judge-made exception to the exhaustion requirement and, if it did, second, whether compassionate release should be ordered. This memorandum opinion is in further explanation of the Court's ruling that day.

## Discussion

Livingston, who was sentenced in January 2020, is a 32-year-old Criminal History Category IV offender and was incarcerated in MDC having been convicted for being a felon in possession of a firearm. *See* Gov't Sentencing Mem., Dkt. 33, at 2. There is no question that the

COVID-19 virus knows no borders or boundaries and has invaded MDC.[2] That fact and his claim that prison doctors have diagnosed him with pre-diabetes, which the Court assumes true for purposes of this motion, lie at the heart of Livingston's application for compassionate release. Def.'s Mot., Dkt. 38, at 3. Perhaps even more significant to the evaluation of whether Livingston's application qualifies for the judge-made waiver of the exhaustion requirement is his identification on a list created by BOP of inmates at MDC that BOP in its sole discretion determined were "vulnerable" to the COVID-19 virus. *Id.* at 11.

The mere presence of the virus in a detention facility, of course, could not and should not single-handedly provide a reason for a jail-break release of all detainees from the facility. But, the singling out of Livingston by BOP as a detainee more vulnerable than the ordinary is a fact from which the government cannot run. In the context of the COVID-19 pandemic, Livingston's assignment to this list comfortably places his application for compassionate release within the confines of the unforeseen and unforeseeable deadly circumstances that justify an exception to the exhaustion required by statute and makes the waiver of that requirement appropriate and within the sentencing court's competence to order as it did at the April 15 hearing.[3]

---

[2] According to the latest statistics from BOP, as of April 16, 2020, the MDC has identified 5 positive inmates and 17 positive staff members. *See* Fed. Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last accessed April 16, 2020).

[3] This not to say, however, that placement on the vulnerable population list by BOP is a *sine qua*

4

But, having held the exhaustion requirement waived and with the merits of Livingston's application squarely before the Court, it is here where the tide turned. Under § 3582(c), a sentencing court may reduce a defendant's sentence and order release only if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).[4] U.S.S.G. § 1B1.13 provides guidance as to what constitutes an "extraordinary and compelling reason," including: (i) serious/terminal illness, (ii) age over 65 plus serious deterioration of physical/mental health, (iii) family circumstances, such as the death of a minor child's caregiver, or (iv) "other reasons." *See* U.S.S.G. § 1B1.13 Application Note 1. U.S.S.G. § 1B1.13 provides further that defendant must not be a danger to the community and that the decision must be made in conjunction with the § 3553(a) factors and the applicable policy statements issued by the Sentencing Commission. *Id.*

Livingston's relief application was pegged to the finding by BOP that he was afflicted with pre-diabetes, which, he argued, posed a greater threat to the ill effects of contracting

---

*non* for waiver of the exhaustion requirement. The Court need not, and did not, consider other circumstances that might justify waiver.

[4] Where the merits of the compassionate application are properly before the district court, the court may reduce a defendant's sentence if the defendant is "at least 70 years of age, has served at least 30 years in prison, . . . and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community," but those circumstances clearly do not apply here. 18 U.S.C. § 3582(c)(1)(A)(ii).

COVID-19.  But no other medical evidence or argument was submitted.  Effectively, his argument rises and falls on his placement on the vulnerable population list by BOP.  Yet, nothing in the guidelines promulgated by the Centers for Disease Control and Prevention ("CDC") suggests that pre-diabetes puts one at a higher risk for severe illness from infection.  Indeed, while diabetes is on the CDC's list of high-risk medical conditions, pre-diabetes is not.[5]  *See People Who Are at Higher Risk for Severe Illness*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited Apr. 16, 2020).  On the balance scale, then, Livingston's vulnerability to the adverse impacts of the virus would, at best, be only slightly more concerning than that of the average detainee.

What was on the other side of the balance scale weighed heavily against release. Specifically, Livingston has an extensive criminal record, including the possession of firearms, and had repeatedly shown disrespect for the law and the directions of pretrial officers to refrain from new criminal conduct while on bond.  Gov't Opp'n, Dkt. 39, at 2, 7; Presentence Investigation Report, Dkt. 30, at 5–8.  More specifically, within a day of his release on bond in this case, he would test positive for narcotics and, soon thereafter, would be arrested by local

---

[5] The American Diabetes Association describes prediabetes as the condition of "having blood sugar levels that are higher than normal but not yet high enough to be diagnosed as diabetes." *Prediabetes*, Am. Diabetes Assoc., https://www.diabetes.org/diabetes-risk/prediabetes (last visited Apr. 16, 2020).

police for running crack sales out of his Brooklyn residence. Gov't Opp'n at 2, 7; Presentence Investigation Report at 3–4. As framed by his application papers and argument, upon release, Livingston planned to head right back to the crack-house where police had arrested him. Def.'s Mot. at 13. With this track record, the Court had no reason to believe that he would not soon revert to the criminal conduct leading to his last arrests. Nor could the risk to probation officers of exposure to COVID-19 infection inherent in the supervision of such an offender in the times of this pandemic be justified. It was in the balancing of the totality of these circumstances that Livingston's application for compassionate release foundered.

## Conclusion

For the reasons stated at the argument on April 15, 2020 and as further explained in this memorandum opinion, the Court found that Livingston's application for compassionate release fit within the very narrow category of applications appropriate for a judge-made exception to the statutory exhaustion requirement imposed under the First Step Act and, therefore, that the Act's exhaustion requirement should be waived. Reviewing the application on its merits, however, the Court determined that the release sought by Livingston, balancing the totality of circumstances, was not justified and, on that basis, denied Livingston the compassionate release he had requested.

    Dated:   Brooklyn, New York
                   April 17, 2020

/s/ENV
ERIC N. VITALIANO
United States District Judge
